UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN D. HODGSON,

          Plaintiff,                     Case No. 2:18-cv-12285
                                         District Judge Stephen J. Murphy, III
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Ryan D. Hodgson, brings this action under 42 U.S.C §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for Title II disability insurance benefits

(DIB) and Title XVI supplemental security income (SSI).  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (DE 11), the Commissioner's cross-motion for

summary judgment (DE 12), and the administrative record (DE 7).

### A.    Background and Administrative History

Plaintiff alleges his disability began on November 30, 2013, at the age of 30.

(R. at 185, 188.)  In his disability report, he lists several conditions (anxiety/panic

disorder, major depressive disorder, insomnia, chronic fatigue, and arthritis) as

limiting his ability to work.  (R. at 252.)  His applications were denied on February

29, 2016.  (R. at 64-91, 104-137.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 139-140.)  On June 30, 2017, ALJ Virginia Herring held a hearing, at which

Plaintiff and a vocational expert (VE), Pauline Pegram, testified.  (R. at 24-63.)

On October 31, 2017, ALJ Herring issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-

23.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

182-184.)  However, on June 5, 2018, the Appeals Council denied Plaintiff's

request for review.  (R. at 1-5.)  Thus, ALJ Herring's decision became the

Commissioner's final decision.

Plaintiff timely commenced the instant action on July 20, 2018.

### B.    Plaintiff's Medical History

The administrative record contains approximately 156 pages of medical records, which were available to the ALJ at the time of her October 31, 2017 decision.  (R. at 22-23, 311-466 [Exhibits 1F-15F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2013, the alleged onset date (AOD).  (R. at 13.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  depression and anxiety with panic attacks.  (*Id.*)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at 13-15.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except frequently stoop, kneel, crouch, or crawl, and climb ladders, ropes and scaffolds.  He is limited to

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

simple and routine tasks in an environment where he will not have to interact with the public.

(*Id*. at 15-17.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 18.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner/housekeeper, laundry worker, and hand packager.  (*Id*. at 18-19.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 30, 2013, through the date of the decision.  (*Id*.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.      Analysis**

Plaintiff makes several statements of error, each of which concerns the

ALJ's assessment of Plaintiff's mental RFC, attacking the RFC, the ALJ's failure

to recontact the consultative physician, and the manner of discrediting Plaintiff's

testimony (with respect to lack of treatment and side effects of medication).  (DE

11 at 13-20.)  The Commissioner contends that the ALJ:  **(1)** properly determined

Plaintiff's mental RFC; **(2)** was not required to re-contact the consultative

examiner (CE), Sung-Ran Cho, M.D.; and, **(3)** properly evaluated Plaintiff's

subjective complaints.  (DE 12 at 5-23.)

> **1.      Whether the ALJ's mental RFC assessment is supported by
> substantial evidence?**

> **a.      The February 2016 state agency opinion was
> subjected to the "prior mental health criteria."**

Plaintiff takes issue with the ALJ's treatment of the state agency consultants'

opinions.  By way of background, on September 27, 2013, state agency consultant,

David A. Harley, Ph.D., opined that there was insufficient evidence "to

substantiate the presence of a disorder[,]" and "upon which to base a sound

determination of mental functioning."  (R. at 95, 100.)  On February 27, 2016, state

agency consultant, Barbara Jones Smith, Ph.D., considered the "'B' Criteria of the

listings" and determined that Plaintiff was <u>mildly restricted</u> in Activities of Daily

Living (ADLs), had <u>moderate difficulties</u> in maintaining social functioning, and

had <u>moderate difficulties</u> in maintaining concentration, persistence or pace (CPP), but <u>no</u> episodes of decompensation, each of extended duration.  (R. at 70, 83.)

Through January 16, 2017, the four "broad functional areas" were:  **(a)** activities of daily living; **(b)** social functioning; **(c)** CPP; and, **(d)** episodes of decompensation.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3) (effective June 13, 2011 to January 16, 2017).  Therefore, it is understandable that Dr. Smith rendered her February 27, 2016 opinion in accordance with the "prior mental health criteria."

> **b.    The "current mental health criteria" became effective in January 2017, before the ALJ's October 2017 opinion.**

Effective January 17, 2017, the "broad functional areas" were changed to: **(a)** understand, remember, or apply information; **(b)** interact with others; **(c)** concentrate, persist, or maintain pace; and **(d)** adapt or manage oneself.  *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138-01 (Sept. 26, 2016); 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  In alignment with these changes, the ALJ's October 31, 2017 Step 3 analysis determined that Plaintiff had <u>mild limitations</u> in understanding, remembering, or applying information, <u>moderate limitations</u> in interacting with others, <u>moderate limitations</u> in his ability to concentrate, persist, or maintain pace, and <u>mild limitations</u> in his ability to adapt or manage himself.  (R. at 14.)  Then, within the RFC discussion, the ALJ stated:

> . . . The psychological consultants' mental assessments, by Drs. Jones Smith and Harley, are given <u>partial weight</u> because *although the prior mental health criteria w[ere] used, the evaluation of having moderation limitations in the areas of social functioning and [CPP] remain accurate and consistent with the evidence in the file.* The particular findings that the claimant is capable of simple and routine tasks is given <u>great weight</u>[.]

(R. at 17 (emphases added).)

### c.   There is support for the ALJ's mental RFC, and the ALJ did not need to order a physician assessment under the "current mental health criteria."

Plaintiff contends that "there is absolutely no support for her RFC assessment <u>and</u> the record is devoid of any RFC assessments from any physicians consistent with the current mental health criteria." (DE 11 at 13 (emphasis added).) This argument does not show remandable error.

First, to the extent Plaintiff argues that Dr. Smith "did not state opinions concerning interacting with others; ability to adapt or manage himself or understanding, remembering or applying information," (DE 11 at 14), Dr. Smith opined on the criteria in place at the time she issued her decision. Perhaps more importantly, as the Commissioner points out, the changes in the "broad functional areas" concern the Steps 2 and 3 severity assessment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). (DE 12 at 8-9.) These stages of the sequential process are not the subjects of Plaintiff's statement of error.

Second, to the extent Plaintiff considers the RFC to be "simply conclusory in violation of SSR 96-8p . . . [,]" and not made in reliance upon a physician's opinion (DE 11 at 14), it should be noted that, in assessing Plaintiff's mental RFC, Dr. Smith also determined that Plaintiff was underlined moderately limited in his abilities to: (**a**) understand and remember detailed instructions; (**b**) carry out detailed instructions; (**c**) maintain attention and concentration for extended periods; (**d**) interact appropriately with the general public; (**e**) accept instructions and respond appropriately to criticism from supervisors; and (**f**) respond appropriately to changes in the work setting.  (R. at 73-74, 86-87.)  Additionally, Dr. Smith determined that Plaintiff was not significantly limited in his abilities to:  (**a**) understand and remember very short and simple instructions; (**b**) carry out very short and simple instructions; (**c**) make simple work-related decisions; and, (**d**) ask simple questions or request assistance.  (*Id*.)  In the end, Dr. Smith explained that Plaintiff "retains the mental residual capacity to perform step one/two tasks on a sustained basis."  (R. at 74, 87.)

As noted above, the ALJ assigned "great weight" to Dr. Smith's findings that Plaintiff was capable of "simple and routine tasks . . . [,]" and ultimately determined that Plaintiff should be "limited to simple and routine tasks in an environment where he will not have to interact with the public."  (R. at 17, 15.) Plaintiff has not shown that the ALJ's mental RFC assessment lacks support, nor

has Plaintiff shown that Dr. Smith's mental RFC assessment, namely the various

moderate limitations listed in the prior paragraph, is inconsistent with the RFC's

mental health limitations.  In sum, Plaintiff has not shown his entitlement to

remand "for an updated consultative examination or State Agency medical

evaluation consistent with the new mental health criteria  . . . [,]" as the ALJ did

not "simply input[] her medical opinion . . . ."  (DE 11 at 14-15.)

### 2. Whether the ALJ erred when she failed to recontact the consultative examiner for more information?

Plaintiff also takes issue with the ALJ's treatment of the CE's opinion.  On

February 15, 2016, psychiatrist Sung-Ran Cho, M.D. performed a consultative

examination.  (R. at 395-399 [Ex. 8F].)  Dr. Cho diagnosed Plaintiff with, *inter*

*alia*, persistent depressive disorder, noted a history of polysubstance abuses, and

assessed Plaintiff's global assessment of functioning (GAF) score as 57.  (R. at

398.)  Dr. Cho also noted that Plaintiff's prognosis was "[f]air if he continues with

the psychiatric treatment and does not abuse controlled substances[,]" and further

noted that Plaintiff was unable to handle the benefit funds "due to the history of

extensive polysubstance abuses."  (*Id.*)

Within the RFC discussion, the ALJ noted that treating psychiatrist Leon

Rubenfaer, M.D. consistently scored Plaintiff's GAF as "50," "which is indicative

of serious symptoms[,]" and considered Dr. Cho's "57" GAF "also indicative of

serious symptoms[.]"  (R. at 16, 401, 403, 405, 407, 432, 398.)  In fact, these

scores suggest moderate symptoms.  "GAF is the Global Assessment of

Functioning, and is on a scale of 0–100, with mental health highest at the high end;

50–60 indicates moderate symptoms or moderate difficulty in social, occupational,

or school functioning."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 463 (6th

Cir. 2006).  Furthermore, ALJs are not required to defer to these scores.  *DeBoard*

*v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006).  Nonetheless, the

ALJ explained that these assessments "do not support a finding that the claimant is

unable to meet competitive work standards[,]" and "accorded little weight to the

GAF scores of record as they are found to have very limited probative value in

determining the claimant's actual functional limitations in this matter."  (R. at 16-

17.)

Plaintiff argues that the ALJ erred by failing "to recontact the consultative

physician for more information[,]" in support of which he cites a pre-March 26,

2012 version of 20 C.F.R. §§ 404.1512(e), 416.912(e) ("Recontacting medical

sources.").  (DE 11 at 15.)  However, "[n]ew regulations became effective on

March 26, 2012, rendering the decision to recontact discretionary."  *Hollis v.*

*Comm'r of Soc. Sec.*, No. 13-13054, 2015 WL 357133, at *24 (E.D. Mich. Jan. 27,

2015) (citing *How We Collect and Consider Evidence of Disability*, 77 Fed.Reg.

10,651 (Feb. 23, 2012) (codified at 20 C.F.R. § 404.1520b)).[2]

Plaintiff filed his DIB and SSI applications on October 30, 2015 and

February 26, 2016, respectively.  (R. at 185, 188.)  Thus, the April 20, 2015 to

March 26, 2017 version of 20 C.F.R. §§ 404.1512, 416.912 ("Evidence") applies to

Plaintiff's claim.  As to obtaining a consultative examination, this version of the

regulation provides that the SSA "*may* ask you to attend one or more consultative

examinations at our expense."  20 C.F.R. §§ 404.1512(e), 416.912(e).  Moreover,

the regulations describe how the SSA "*may* recontact your medical source."  20

C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i) (effective March 27, 2017)

(emphasis added).

---

[2] Plaintiff's counsel should know better, as this was brought to her attention before
Plaintiff filed his instant December 21, 2018 motion for summary judgment.  *See
Eagal v. Comm'r of Soc. Sec.*, No. CV 17-13389, 2018 WL 7254611, at *5 (E.D.
Mich. Oct. 31, 2018) (Whalen, M.J.) ("the regulation[] pertaining to
the recontacting of medical sources was revised effective March 26, 2012,
clarifying that the decision to recontact a source is within the discretion of the
ALJ."), *report and recommendation adopted*, No. 17-CV-13389, 2019 WL 125995
(E.D. Mich. Jan. 8, 2019) (Leitman, J.); *Amso v. Comm'r of Soc. Sec.*, No. 2:17-
CV-11750, 2018 WL 4854110, at *8 (E.D. Mich. May 1, 2018) ("Plaintiff cites a
version of § 404.1512(e) no longer in effect when the ALJ rendered his decision.")
(Morris, M.J.), *report and recommendation adopted*, No. 17-11750, 2018 WL
4001923 (E.D. Mich. Aug. 22, 2018) (Edmunds, J.).  Yet counsel persists.  The
next time it happens, counsel should be prepared to explain why sanctions are not
in order.

With the proper standard established, the Court now considers Plaintiff's

claim that, given the ALJ's discreditation of Dr. Cho's GAF score, the ALJ erred

by "not re-contacting Dr. Cho to determine why he assessed a GAF score of 57 and

how the GAF score of 57 supports Plaintiff's inability to meet competitive work

standards."  (DE 11 at 16.)  First, the Sixth Circuit has explained the utility of GAF

scores as follows:

> The [Global Assessment Functioning] score is a subjective
> determination that represents 'the clinician's judgment of the
> individual's overall level of functioning.  We have previously held that
> the failure to reference a Global Assessment Functioning score is not,
> standing alone, sufficient ground to reverse a disability determination.
>
> Moreover, the Commissioner has declined to endorse the [Global
> Assessment Functioning] score for use in the Social Security and
> [Supplemental Security Income] disability programs, and has
> indicated that [Global Assessment Functioning] scores have no direct
> correlation to the severity requirements of the mental disorders
> listings.  Accordingly, we have affirmed denials of disability benefits
> where applicants had Global Assessment Functioning scores of 50 or
> lower.

*DeBoard*, 211 F. App'x at 415 (quotation marks and citations omitted).  Thus, the

ALJ's discounted treatment of the GAF scores is consistent with the Sixth Circuit's

guidance.

Second, and more importantly, it does not appear that the ALJ was "unclear"

about Dr. Cho's "opinion . . . concerning Plaintiff's ability to meet competitive

work standards considering his GAF score of 57 which is often indicative of

serious symptoms."  (DE 11 at 16-17.)  Instead, it appears that the ALJ simply

discounted the GAF scores, however serious, based on the supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).  In sum, the Court is not convinced that the ALJ should have sent interrogatories to the CE to determine the CE's opinion on Plaintiff's "ability to meet competitive work standards," in particular, several of the "broad functional areas," (DE 11 at 17).

### 3.      Whether the ALJ improperly discredited Plaintiff?

Plaintiff's remaining two statements of error relate to the ALJ's credibility determination, *i.e.*, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 17.)  For each of Plaintiff's credibility arguments, he cites SSR 96-7p.  (*See* DE 11 at 17-20.)  However, this Social Security Ruling was superseded in March 2016 by SSR 16-3p.[3]  SSR 16-3p, which concerns evaluation of symptoms in disability claims, provides that, "[i]n addition to using all of the evidence to evaluate the intensity, persistence, and

_____

[3] This was likewise brought to Plaintiff's counsel's attention prior to the filing of the instant December 21, 2018 motion.  *See*, *e.g.*, *Fenderson v. Comm'r of Soc. Sec.*, No. CV 17-13620, 2018 WL 7254257, at *8 n.8 (E.D. Mich. Nov. 26, 2018) (Whalen, M.J.) ("SSR 16-3p rather than SSR 96-7p applies to the evaluation of a claimant's subjective allegations in administrative determinations made on or after March 28, 2016, including the current administrative decision of December 6, 2016."), *report and recommendation adopted*, No. 17-13620, 2019 WL 188968 (E.D. Mich. Jan. 14, 2019).  One begins to seriously wonder if counsel reads this Court's unfavorable opinions and then ignores them, intentionally or negligently misleading the Court thereafter, or simply does not read them at all.

limiting effects of an individual's symptoms," the SSA "will also use the factors set

forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3)[,]" including:

1.    Daily activities;

2.    The location, duration, frequency, and intensity of pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, *7-*8 (S.S.A. Oct. 25, 2017).

### a.    Failure to obtain treatment (without first considering his explanation for this lack of treatment)

Plaintiff contends that the ALJ erred by discrediting him "for his failure to

obtain treatment without first considering his explanations for this lack of

treatment."  (DE 11 at 17.)  To provide background, the ALJ's RFC assessment

reviewed Plaintiff's testimony.  (R. at 15-16.)  The ALJ also noted that, "[o]verall,

[Plaintiff] has not had very much treatment for impairments that are allegedly

15

disabling." (R. at 16.) As best the Court can tell, the post-AOD records for

*treatment* by mental health professionals are not plentiful:

- An undated, 9 line letter from Myranda Jennings, M.A., L.L.P.C. of Southfield Mental Health Associates, which states that, from February 18, 2016 to March 31, 2016, she met with Plaintiff "four times for counseling sessions[,]" but also states that she "scheduled one session each week and Mr. Hodgson was unable to attend 3 of those scheduled sessions." (R. at 466 [Ex. 15F]). The letter goes on to state an opinion that Plaintiff stopped attending sessions prematurely. In a single sentence, it recounts the topics discussed in counseling, but it provides no diagnoses, prognoses or other opinions.

- Treatment with psychiatrist Dr. Rubenfaer in August, September and November 2015 (R. at 385-390 [Ex. 6F]), January, April, June and November 2016 (R. at 400-409 [Ex. 9F]), and March 2017 (R. at 431-434 [Ex. 11F]). Among these is the January 2016 MSS (R. at 391-394 [Ex. 7F]).

- Plaintiff underwent an intake assessment at Eastwood Clinics on March 20, 2017. (R. at 435-437 [Ex. 12F].)[4]

Moreover, at the June 30, 2017 administrative hearing, Plaintiff testified that he

was seeing a therapist "[e]very two weeks." (R. at 37.)

In particular, Plaintiff is attacking the ALJ's following statement, which

reflects upon compliance:

. . . he *has not been compliant* with his medical care in terms of consistently attending treatment. More specifically, the records also

---

[4] At this point, Plaintiff was 34 years old. (R. at 185, 188.) He reported having stopped treatment "in [his] late 20's due to lack of funds to pay for it." (R. at 435.) However, given that Plaintiff was 30 years old on his alleged onset date, a "late 20's" cessation of treatment would not be relevant in this appeal, as it would have occurred before the alleged onset date.

show that he treated with Myranda Jennings, MA, LLPC, but in a
letter written by her, she indicated that between February and March
2016, she had four scheduled treatment sessions with the claimant;
however, he failed to attend three of those scheduled sessions and
never returned for treatment (Exhibits 12F [R. at 435-437] and 15F
[R. at 466]). The fact that the claimant failed to attend multiple
appointments for therapy tends to undermine the severity of his
impairments since it would likely help control his symptoms.

(R. at 17, DE 11 at 18 (emphasis added).)[5] In support of his argument, Plaintiff

points to his testimony that he has regularly been seeing a therapist, *i.e.*, "[e]very

two weeks." (R. at 37, 41; DE 11 at 18.) Yet, Plaintiff contends, the ALJ "did not

question [him] concerning this treatment, nor his missed appointments . . . , nor did

the ALJ consider Plaintiff's *potential reasons* for missing appointments, including

that his anxiety, and crippling depression would often prevent him from engaging

in his regular activities." (DE 11 at 18 (emphasis added).)[6]

Had Plaintiff cited the current Social Security Ruling, the Court suspects he

would rely upon its direction that the SSA "will not find an individual's symptoms

inconsistent with the evidence in the record on this basis without considering

possible reasons he or she may not comply with treatment or seek treatment

---

[5] After making this statement, the ALJ assigned little weight to Dr. Rubenfaer's
suggested limitations and partial weight or great weight to certain portions of the
state agency consultant's findings. (R. at 17.)

[6] Although Plaintiff does not provide record citations for these *potential reasons*,
perhaps he is referring to his testimony regarding the frequency, length, and results
of his panic attacks or his testimony that his anxiety and panic attacks are "side
effects of [his] depression[,]" which "is the main thing." (*See* R. at 43-45, 48).

consistent with the degree of his or her complaints."  SSR 16-3p, 2017 WL

5180304, *9.  Moreover, the ruling provides that the SSA:

> . . . will consider and address reasons for not pursuing treatment that
> are pertinent to an individual's case. We will review the case record to
> determine whether there are explanations for inconsistencies in the
> individual's statements about symptoms and their effects, and whether
> the evidence of record supports any of the individual's statements at
> the time he or she made them. We will explain how we considered the
> individual's reasons in our evaluation of the individual's symptoms.

(*Id*. at *10.)

Nonetheless, an ALJ may consider a claimant's failure to comply with

treatment as a sufficient reason to discount credibility.  *Sias v. Sec'y of Health &*

*Hum. Servs.,* 861 F.2d 475, 480 (6th Cir. 1988) (concluding that the ALJ properly

discounted the claimant's credibility where he failed to follow prescribed

treatment).  Plaintiff suggests that the ALJ should have explored "why he missed

the appointments between February and March, 2016 . . . ."  (DE 11 at 19.)

However, the ALJ expressly noted Plaintiff's explanation that "sporadically, there

are times when he cannot even leave his home because he is overcome with

depression[,]" (R. at 15), although the Court notes that the testimony attributed this

to panic (R. at 35).  The ALJ also acknowledged that Plaintiff was "going to

therapy every other week[,]" (R. at 16), which is supported by Plaintiff's testimony

that he sees his therapist "[e]very two weeks[,]" (R. at 37).  Thus, even if not

mentioned within the same non-compliance paragraph that Plaintiff contests, the

ALJ's RFC assessment was informed by more than just the undated note from therapist Jennings.  In light of this, Plaintiff is incorrect in contending that the ALJ did not "consider Plaintiff's potential reasons for missing appointments . . . ."  (DE 11 at 18.)  Plaintiff is also incorrect in representing to the Court that the ALJ "did not question Plaintiff concerning this treatment[,]" (*id.*), as the ALJ <u>very clearly did,</u> by asking if he is getting counseling, how often he sees his therapist, whether it is helping him, and then acknowledged the testimony that Plaintiff sees his counselor regularly.  (R. at 37, 41.)  Moreover, Plaintiff's attorney could have asked, but apparently did not ask, follow-up questions concerning reasons or explanations for lack of treatment.  (R. at 46-52.)  Simply put, Plaintiff has not shown the Court that the ALJ errantly discounted his credibility based on noncompliance with consistently attending treatment.

### b.  The side effects of Plaintiff's medications upon his ability to work

Plaintiff also argues that the ALJ "failed to discuss, much less consider, the side effects from Plaintiff's medications on his ability to work."  (DE 11 at 19.)  When evaluating symptoms, including pain, the Social Security Administration (SSA) will consider "other evidence," such as "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"  20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

At the administrative hearing, Plaintiff testified about medication side effects, such as that Xanax "makes me drowsy, can't really drive on it and I require it several times a day just to sort of relax." (R. at 37.) Plaintiff also stated that "a happy side effect of Wellbutrin is you don't want to smoke anymore." (R. at 38.) Also, Plaintiff testified that he has a prescription for marijuana, which "relaxes me quite a bit but it also – you know, just the side effect is makes you forgetful." (R. at 38-39.)

Within the RFC discussion, the ALJ acknowledged that Plaintiff "takes medications, but has side effects including drowsiness and cannot drive." (R. at 16.) The ALJ also recognized that Plaintiff "uses medical marijuana frequently, sometimes daily, but there is nothing in the record to show that i[t] was prescribed by a physician." (*Id*.) In addition, the ALJ determined that Plaintiff was limited to light work, frequent postural activity and no "need to interact with the public[,]" due to Plaintiff's "alleged chronic fatigue and susceptibility to panic attacks, as well as his chronic forgetfulness and side effects from medications[.]" (*Id*.) The ALJ also acknowledged prescriptions for Xanax during August 2012, December 2012, and May 2015, as well as Dr. Rubenfaer's November 2012 notes that Plaintiff felt better with use of Wellbutrin and Xanax. (R. at 16, 319, 358, 343, 443, 385.) Thus, Plaintiff's contention that "[n]owhere in the ALJ's decision does . . . she address Plaintiff's utilization of Xanax and marijuana as well as the side

effects the utilization of these medications would have on his ability to work, as required[,]" (DE 11 at 20), is simply inaccurate.

### c.    The ALJ's credibility finding should stand

In this case, Plaintiff failed to show that the ALJ impermissibly discounted Plaintiff's credibility for not "consistently attending treatment." (R. at 17.) Nor has Plaintiff shown that the ALJ errantly addressed the side effects of medication upon Plaintiff's ability to work. Moreover, "an administrative law judge's credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112–13 (6th Cir. 2010)). *See also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (same). Thus, the ALJ's credibility finding should stand.

### F.    Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's

motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 8, 2019                          s/*Anthony P. Patti*
                                                Anthony P. Patti
                                                UNITED STATES MAGISTRATE JUDGE